Evan **WASHINGTON**, Howard Pierson IV and Secunda Crump, Plaintiffs,

v.

**COUNTY OF ROCKLAND, James F. Kralik, in his individual capacity, Thomas Guthrie, in his individual capacity, Dennis Thornton, in his individual capacity, Kim Saucier, in his individual capacity, Nicholas Solfaro, in his individual capacity, and William J. Clark, in his individual capacity, Defendants.**

**No. 00 CIV. 6966(WCC).**

United States District Court, S.D. New York.

July 22, 2002.

508

Law Offices of Ambrose W. Wotorson, P.C., Brooklyn, NY (Ambrose W. Wotorson, of counsel), for plaintiffs.

Law Offices of Jeffrey S. Rovins, New York City (Jeffrey S. Rovins, of counsel), for defendants.

WILLIAM C. CONNER, Senior District Judge.

Plaintiffs Evan Washington, Howard Pierson IV and Secunda Crump, black Correction Officers ("C.O."s) at the Rockland County jail (the "RCJ"), bring the instant action pursuant to 42 U.S.C. §§ 1981 and 1983 against the County of Rockland and Rockland County Sheriff James F. Kralik, Undersheriff Thomas Guthrie, Detective Dennis Thornton, Detective Kim Saucier, Chief Nicholas Solfaro and Captain William J. Clark, each in his individual capacity. Plaintiffs claim, *inter alia*, that defendants violated their rights under the First and Fourteenth Amendments of the United States Constitution by maliciously prosecuting them on account of race and in retaliation for their opposition to defendants' discriminatory practices. Defendants now move to dismiss the complaint pursuant to FED. R.CIV.P. 12(b)(6), or, in the alternative, for summary judgment pursuant to FED. R.CIV.P. 56. For the reasons that follow, defendants' motion is granted as one for summary judgment.

## BACKGROUND

The following facts are undisputed unless otherwise noted. In August 1996 the Rockland County Sheriff's Department (the "RCSD") conducted an investigation to determine whether contraband was being distributed to inmates at the RCJ. (Defs.Rule 56.1 Stmt. ¶ 1.) When allegations of cigarette smuggling surfaced, Clark, then a lieutenant, conducted preliminary interviews with inmates and forwarded a written report to Detective Tortorello,

who was responsible for determining whether criminal charges should be brought. (Pls.Mem.Opp.Summ.J. at 4.) Tortorello assumed control of the investigation and, along with other officials, interviewed inmates who confirmed that cigarette contraband was being sold in the jail. (*Id.*) Tortorello then initiated an investigation, naming Detective Saucier as the lead investigator. (*Id.*; Defs.Rule 56.1 Stmt. ¶ 10.) As the lead investigator, Saucier, assisted by Thornton and other detectives, conducted interviews of inmates brought from the RCJ to the RCSD.[1] (Defs.Rule 56.1 Stmt. ¶¶ 11, 13.) According to defendants, inmate interviews revealed that Washington gave a cigarette to an inmate, that Crump knew that cigarettes were stored at the RCJ and gave a birthday card to an inmate, and that Pierson gave food and beer to an inmate.[2] (*Id.* ¶¶ 17–20.) At the close of the investigation, Saucier gave Tortorello a report naming the C.O.s accused of distributing contraband as well as recommendations as to whom to charge criminally. (Pls.Mem.Opp.Summ.J. at 5.)

The criminal investigation led to the arrest of several C.O.s. (*Id.*) However, criminal charges were not brought against plaintiffs because Saucier and Thornton concluded that there was no evidence corroborating the inmates' testimony. (*Id.*; Defs.Rule 56.1 Stmt. ¶¶ 21–23.) After determining that criminal charges would not be prosecuted against plaintiffs, Tortorello turned the case over to the RCSD to determine whether disciplinary charges were appropriate. (Pls.Mem.Opp.Summ.J. at 5.)

---

1. According to plaintiffs, there is "no dispute" that defendants circulated a list of potentially corrupt officers, who were all black, in order to obtain incriminating information. However, this Court has uncovered no evidence supporting this allegation.

2. Plaintiffs maintain that this information was not credible because it was based solely on the suggestions of inmates and may be attributed to the inmates' desire to obtain leniency on their sentencing. (Pls.Opp.Rule 56.1 Stmt. ¶¶ 17–20.)

· Joseph Suarez is counsel to the Sheriff of Rockland County whose duties include advising the Sheriff on disciplinary charges against employees and conducting disciplinary hearings. (Defs.Rule 56.1 Stmt. ¶¶ 40, 41.) After reviewing Saucier and Thornton's reports on contraband distribution and discussing the matter with them, · Suarez recommended that Kralik proceed with disciplinary charges against plaintiffs. (*Id.* ¶¶ 43, 44.) Kralik subsequently approved the charges. (*Id.* ¶¶ 48–50.) Before the disciplinary hearings were held, Solfaro spoke to Suarez and Guthrie and expressed his concerns about proceeding with disciplinary action solely on the word of inmates. (Solfaro Dep. at 65.) This concern was echoed by other officers, including Clark and Farina. (*Id.* at 65–66.) Nevertheless, plaintiffs were each charged with Promoting Prison Contraband—Washington on October 28, 1996, Pierson on July 7, 1997 and Crump on August 26, 1997. (Defs.Rule 56.1 Stmt. ¶¶ 51–53.)

According to plaintiffs, the only individuals that faced non-criminal disciplinary charges were the three black plaintiffs and two non-black officers, Hector Torres and Eric Serrano. (Pls.Mem.Opp.Summ.J. at 9.) Plaintiffs maintain that the charges against Torres and Serrano were dropped while plaintiffs were brought to hearings on the charges.[3] (*Id.*) Plaintiffs allege that, during the pendency of the disciplinary charges against them, they complained to their supervisors that they were being disciplined more severely than whites.

---

**3.** The evidence appears to show that hearings were held as to Torres, but that the charges against him were ultimately dismissed, as were those against plaintiffs. (*See* Suarez Dep. at 83.)

**4.** Plaintiffs point to a number of instances where white corrections officers committed offenses but were not subject to formal disci-

(*Id.*) On March 12 and March 26, 1997, plaintiffs Crump and Washington, respectively, filed formal complaints of discrimination claiming that white officers who were observed carrying contraband were not being disciplined.[4] (Wotorson Aff., Exs. 4, 13.)

In the case of Crump and Pierson, disciplinary proceedings were conducted pursuant to Section 75 of the Civil Service Law.[5] (Wotorson Aff., Exs. 7, 8.) The hearing officer found plaintiffs not guilty for lack of sufficient evidence—Pierson on· February 8, 1998 and Crump on February 9, 1998. (*Id.*) At the termination of these proceedings, Kralik informed Crump and Pierson that all charges were withdrawn and that any loss of pay would be restored. (Wotorson Aff., Exs. 9, 10.) Washington submitted to binding arbitration, and was found not guilty on July 21, 1998. (*Id.*, Ex. 12.) The arbitrator stated that Washington was to be "made whole" for any period of suspension without pay related to the charges. (*Id.*) This action followed.

## DISCUSSION

### I. *Statute of Limitations*

■ Defendants argue that all of plaintiffs' claims are time-barred. According to defendants, the applicable statute of limitations for malicious prosecution under New York law is provided by GEN.MUN.L. § 50-i, which states that actions against a municipality for personal injury must be commenced within one year and ninety days of the event complained of. The

---

plinary hearings. (Pls.Mem.Opp.Summ.J. at 9.)

**5.** Apparently, plaintiffs were able to elect whether to proceed with a Section 75 hearing or a binding arbitration as provided by union contract. (*See, e.g.,* Wotorson Aff., Ex. 5 p. 3.) Plaintiffs were also given the option to waive a hearing. (*Id.*)

Second Circuit, however, has held that § 50–i will not bar a federal civil rights action, such as the instant one brought pursuant to §§ 1981 and 1983.[6] *Taylor v. Mayone,* 626 F.2d 247, 253 (2d Cir.1980). Instead, the appropriate statute of limitations for federal civil rights actions brought in New York federal courts is the three-year general personal injury provision of N.Y.C.P.L.R. § 214. *Id.; see also Eagleston v. Guido,* 41 F.3d 865, 871 (2d Cir.1994) (§ 1983 actions subject to a three-year statute of limitations); *Tadros v. Coleman,* 898 F.2d 10, 12 (2d Cir.1990) (§ 1981 actions subject to three-year statute of limitations).

■ Even when a three-year statute of limitations is applied to the instant action, defendants argue that the malicious prosecution claims arose when the disciplinary charges were brought against plaintiffs, which was more than three years before this action was commenced.[7] However, as the Second Circuit has explained, the requirement in a malicious prosecution action that the prior proceeding conclude in favor of the plaintiff means that the statute of limitations does not start to run until the proceeding is terminated. *See Singleton v. City of New York,* 632 F.2d 185, 193 (2d Cir.1980); *see also Janetka v. Dabe,* 892 F.2d 187, 189 (2d Cir.1989); *Beberaggi v. New York City Transit Auth.,* No. 93 Civ. 1737, 1994 WL 75144, at *3 (S.D.N.Y. March 9, 1994). Therefore, because it is undisputed that the earliest disciplinary proceeding against a plaintiff was terminated on February 8, 1998, plaintiffs' § 1983 malicious prosecution claims are timely.

■ Plaintiffs' § 1983 and § 1981 discrimination claims, however, are time-barred. "While state law supplies the statute of limitations for claims under § 1983, federal law determines when a federal claim accrues." *Eagleston,* 41 F.3d at 871. Under federal law, a § 1983 claim accrues, "when the plaintiff knows or has reason to know of the harm." *Id.* The crux of plaintiffs' discrimination claims is that defendants selectively maintained disciplinary actions against them on account of race. (*See* Complt. ¶¶ 19, 21.) For purposes of tolling the statute of limitations, plaintiffs knew of this alleged harm when they were charged with disciplinary violations. All plaintiffs were charged with these violations more than three years before this action was brought. *See infra* note 6. Indeed, Crump and Washington formally complained of this alleged discriminatory treatment in March of 1997. (*See* Wotorson Aff., Exs. 4, 13.) It is thus indisputable that plaintiffs knew of the actions giving rise to their § 1983 and § 1981 claims more than three years before filing the instant action. These claims are therefore untimely.

■ Plaintiffs also bring § 1983 claims for retaliation in violation of their First Amendment rights. Plaintiffs argue that defendants proceeded with full disciplinary hearings against them in part because they had complained about discriminatory treatment at the RCSD. (Pls.Mem.Opp.Summ.J. at 17.) According to plaintiffs, the C.O.s who did not file grievances had their cases dismissed before a formal hearing took place. (*Id.*) Because plaintiffs' First Amendment retal-

---

**6.** In their moving papers, defendants state that plaintiffs have asserted a malicious prosecution claim as a pendent state law claim. (*See* Defs. Reply Mem.Supp.Summ.J. at 1.) The Complaint, however, does not assert any claims under state law.

**7.** The Complaint in the instant action was filed on September 18, 2000. Crump, the last plaintiff to be charged with the violations at issue, was charged on August 26, 1997.

iation claims focus on the commencement of full disciplinary hearings, the date of the respective hearings is the date that a cause of action would accrue. The earliest hearing against any of the plaintiffs was held on February 8, 1998, less than three years before the instant Complaint was filed. (Wotorson Aff., Ex. 8.) Plaintiffs' § 1983 retaliation claims are thus timely. This Court will therefore consider the merits of plaintiffs' malicious prosecution and retaliation claims.

## II. *Summary Judgment Standard*[8]

Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Ticali v. Roman Catholic Diocese of Brooklyn,* 41 F.Supp.2d 249, 254 (E.D.N.Y. 1999). A genuine factual issue exists if there is sufficient evidence favoring the nonmovant for a reasonable jury to return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Ticali,* 41 F.Supp.2d at 254. In deciding whether summary judgment is appropriate, the court should resolve all ambiguities and draw all permissible factual inferences against the movant. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. Summary judgment is warranted when the nonmov-

ant has no evidentiary support for an essential element on which it bears the burden of proof. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Silver v. City Univ. of N.Y.,* 947 F.2d 1021, 1022 (2d Cir.1991).

## III. *Malicious Prosecution*

■ In order to state a claim for malicious prosecution under § 1983, a federal plaintiff must prove the elements of malicious prosecution under state law. *Easton v. Sundram,* 947 F.2d 1011, 1017 (2d Cir. 1991). "To establish a malicious prosecution claim under New York law, a plaintiff must show that a proceeding was commenced or continued against him, with malice and without probable cause, and was terminated in his favor." *Fulton v. Robinson,* 289 F.3d 188, 195 (2d Cir.2002). In addition, after the Supreme Court's decision in *Albright v. Oliver,* 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), in order to prevail on a § 1983 claim for malicious prosecution, a plaintiff must also show a violation of his rights under the Fourth Amendment. *See, e.g., Murphy v. Lynn,* 118 F.3d 938, 944 (2d Cir.1997).

■ Defendants argue that plaintiffs fail to state a claim for malicious prosecution because New York law only recognizes claims for malicious prosecution arising out of criminal proceedings. (Defs.Mem.Supp.Summ.J. at 8.) Defendants are incorrect. New York state courts have held that administrative proceedings which exhibit "sufficient attributes of judicial proceedings" may indeed form the basis for a malicious prosecution claim under New York law. *See Groat v. Town Bd. of Glenville,* 73 A.D.2d 426, 426

---

8. In addition to moving for summary judgment, defendants move to dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(6). However, because this Court relies on material outside of the pleadings in deciding this motion, treating the instant motion as one

under 12(b)(6) is inappropriate. *See, e.g., Kopec v. Coughlin,* 922 F.2d 152, 154 (2d Cir. 1991) (where materials outside of the pleadings are presented, court should either exclude additional material, or treat the motion to dismiss as one for summary judgment).

N.Y.S.2d 339, 340–41 (3d Dep't 1980). However, plaintiffs bring their claims for malicious prosecution under § 1983, not under New York state law. (*See* Complt. ¶¶ 1, 19.) As the Second Circuit has stated, "[s]imply because New York state affords a tort of civil malicious prosecution does not transform [the plaintiff's] claim into a constitutional cause of action." *Easton*, 947 F.2d at 1017. In *Easton*, the Second Circuit explained that civil proceedings do not implicate the same constitutional rights as criminal prosecutions.[9] Moreover, recent decisions in this Circuit have held that civil proceedings are insufficient to support § 1983 claims based on malicious prosecution. *See Laham v. Safir*, No. 98 Civ. 3115, 2001 WL 1448441, at *3 (S.D.N.Y. Nov.15, 2001); *Mistretta v. City of New York*, No. 98 Civ. 2589, 1999 WL 1129618, at *7 (E.D.N.Y. Oct. 15, 1999) (citing *Easton*, 947 F.2d at 1017) (claim of malicious prosecution sufficient to support a § 1983 action "must arise out of a criminal, not a civil proceeding, even where state tort law recognizes an action for malicious prosecution based on the latter"). Because plaintiffs' § 1983 malicious prosecution claims are based on non-criminal, administrative proceedings, plaintiffs have failed to state a constitutional claim. Summary judgment on this issue is therefore granted in favor of defendants.[10]

### IV. *First Amendment Retaliation*

Plaintiffs allege that defendants subjected them to disciplinary hearings in retaliation for complaining about the RCSD's discriminatory practices. (Complt.¶ 19.) In order to make out a *prima facie* First Amendment retaliation case under § 1983, a plaintiff must demonstrate that: (1) his speech was constitutionally protected; (2) he suffered an adverse employment action; and (3) a causal connection exists between the speech and the adverse employment action so that it can be said that the speech was a motivating factor in the determination. *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir.1999). Defendants argue that plaintiffs have not alleged any adverse employment action sufficient to implicate their constitutional rights. (Defs.Mem.Supp.Summ.J. at 14.) Plaintiffs do not address this argument in their opposition.

"A plaintiff sustains an adverse employment action if he endures a 'materially adverse change' in the terms and conditions of employment." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir.2000). In order to be "materially adverse" a change must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (quoting *Crady v. Liberty Nat'l Bank and Trust Co.*, 993 F.2d 132, 136 (7th Cir.1993)). "A

---

**9.** Although the court in *Easton* noted that a civil malicious prosecution claim may be transformed into a constitutional cause of action if the plaintiff was subjected to "conscious-shocking" behavior, 947 F.2d at 1018, because it was decided before the Supreme Court's opinion in *Albright*, the malicious prosecution claim in that case was analyzed under the Fourteenth Amendment right to due process. The Second Circuit has since held that "the Fourteenth Amendment right to substantive due process will not support a federal claim for malicious prosecution." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 114 (2d Cir.1995) (citing *Albright*, 510 U.S. at 275, 114 S.Ct. 807). Plaintiffs have not alleged any violation of their rights under the Fourth Amendment to support a malicious prosecution claim consistent with *Albright*.

**10.** Plaintiffs also assert a claim for malicious abuse of process. However, the Second Circuit has held that § 1983 liability may not be predicated on a claim for malicious abuse of civil process. *Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir.1992); *but cf. Cook v. Sheldon*, 41 F.3d 73 (2d Cir.1994) (§ 1983 liability may lie for malicious abuse of criminal process).

materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation." *Id.*

The maintenance of disciplinary charges and formal hearings against plaintiffs in the instant action does not constitute adverse employment action sufficient to state a *prima facie* case for retaliation under § 1983. The charges against plaintiffs were dismissed after the hearings, and any loss of pay suffered by plaintiffs was reinstated. (Wotorson Aff., Exs. 9, 10, 12.) No other disciplinary actions were taken against plaintiffs as a result of these charges. It is unclear how the ultimately dismissed disciplinary charges affected the "terms, privileges, duration or conditions of [the plaintiffs'] employment." *See Yerdon v. Henry*, 91 F.3d 370, 378 (2d Cir. 1996); *see also Wilson v. Consol. Edison Co. of New York, Inc.*, No. 96 Civ. 7546, 2000 WL 335733, at *8 n. 14 (S.D.N.Y. Mar.30, 2000) (reinstatement negates any adverse employment action). In fact, the Second Circuit has held that an employee is not "adversely affected" by disciplinary charges in the workplace unless the charges are decided against him. *See Yerdon*, 91 F.3d at 378 (if charges against an employee were ultimately dismissed "[the plaintiff] would not have suffered any adverse effect from them"); *see also Garcia v. West*, No. 98 Civ. 3905, 1999 WL 782563, at *4 (S.D.N.Y. Sept.30, 1999) (no adverse action when plaintiff was cleared of all charges). Thus, because plaintiffs have failed to allege that they suffered any adverse employment action, they have failed to state a claim for retaliation under § 1983.[11]

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted and all claims against defendants are dismissed.

SO ORDERED.

---

11. Even assuming plaintiffs' § 1983 and § 1981 discrimination claims were timely, *see infra* Part I, plaintiffs' failure to allege any adverse employment action would also require dismissal of those claims. *See, e.g., Jamieson v. Poughkeepsie City School Dist.*, 195 F.Supp.2d 457, 465 (S.D.N.Y.2002) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)) (*prima facie* § 1983 discrimination case requires adverse employment action); *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir.1997) (§ 1981).