373 F.3d 310
 Evan WASHINGTON, Howard Pierson, IV and Secunda Crump, Plaintiffs-Appellants,
v.
COUNTY OF ROCKLAND, James F. Kralik, in his individual capacity, Defendants-Appellees,
Thomas Guthrie, in his individual capacity, Dennis Thorton, in his individual capacity, Kim Saucier, Det.,in his individual capacity, Nicholas Salfaro, in his individual capacity, and William J. Clark, Cpt.,in his individual capacity, Defendants.
 No. 02-7929.
 United States Court of Appeals, Second Circuit.
 Argued: September 2, 2003.
 Decided: June 25, 2004.
 
 COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED Stephen Bergstein, Thornton, Bergstein & Ullrich, LLP, Chester, NY, for plaintiffs-appellants.
 Jeffrey S. Rovins, New York, NY, for defendants-appellees.
 Before: SOTOMAYOR and WESLEY, Circuit Judges, and POLLACK,* District Judge.
 SOTOMAYOR, Circuit Judge.
 Plaintiffs-appellants Evan Washington, Howard Pierson IV and Secunda Crump (collectively, "plaintiffs"), African-American correction officers employed by the Rockland County Sheriff's Department ("RCSD" or "the Department") brought suit, pursuant to 42 U.S.C. §§ 1981 and 1983, against the County of Rockland ("the County") and Rockland County Sheriff James F. Kralik, in his individual capacity (collectively, "defendants").[1] Plaintiffs claimed that defendants engaged in malicious prosecution by bringing meritless disciplinary charges against plaintiffs because of plaintiffs' race and in retaliation for plaintiffs' decision to speak out against defendants' allegedly discriminatory policies and practices. Plaintiffs further allege that defendants selectively maintained meritless disciplinary proceedings against them because of their race and prior opposition to defendants' allegedly discriminatory practices. The district court (Conner, J.) granted summary judgment in favor of defendants on all of plaintiffs' claims.
 
 
 1
 On appeal, we hold that: (1) plaintiffs' malicious prosecution claims fail because a § 1983 malicious prosecution claim may not be premised on a civil administrative proceeding of the type at issue here; (2) plaintiffs' discrimination claims accrued at the time the disciplinary charges were filed, and thus, plaintiffs' filing of the claims more than three years after they accrued rendered them untimely; and (3) although plaintiffs suffered an adverse employment action, their retaliation claim fails nonetheless because they did not demonstrate a causal connection between the adverse employment action and the protected speech.
 
 BACKGROUND
 
 2
 In August 1996, RCSD initiated an investigation to determine whether corrections officers were distributing contraband materials to inmates in the Rockland County jail. Information obtained from inmate interviews suggested that Washington gave an inmate a cigarette, that Pierson gave food and beer to an inmate, and that Crump knew that cigarettes were stored in the jail. Because this information was obtained through uncorroborated inmate testimony, RCSD investigators declined to pursue criminal charges against the three officers and instead referred the matter to Joseph Suarez, Counsel to the Sheriff of Rockland County, to determine if internal administrative charges should be filed.
 
 
 3
 Although subordinates expressed reservations about the reliability of inmate testimony and suggested that the matter be addressed in an internal conference, Suarez ultimately recommended that Sheriff Kralik proceed with administrative disciplinary charges against plaintiffs.
 
 
 4
 On October 28, 1996, Washington was charged with Promoting Prison Contraband. On July 7, 1997 and August 26, 1997, respectively, Pierson and Crump also were charged with Promoting Prison Contraband.[2] Plaintiffs were suspended without pay for thirty days, pursuant to N.Y. Civ. Serv. L. § 75(3). Pierson and Crump were given administrative hearings before a hearing officer, while the disciplinary charges against Washington were resolved in arbitration proceedings. Each plaintiff was found not guilty of Promoting Prison Contraband. The disciplinary charges against Crump and Washington, respectively, were dismissed on February 9, 1998 and July 21, 1998. Although the contraband charge against Pierson was dismissed on February 8, 1998, Pierson was found guilty on a separate charge of permitting two inmates to fight and was discharged by the Sheriff.
 
 
 5
 On September 18, 2000, plaintiffs filed this suit in the United States District Court for the Southern District of New York, alleging that: (1) RCSD's decision to file administrative disciplinary charges against them constituted malicious prosecution because of the evidentiary infirmities undermining the charges; (2) RCSD's decision to pursue administrative disciplinary charges against them was motivated by racial discrimination; and (3) in pursuing administrative disciplinary charges against plaintiffs, RCSD was retaliating against plaintiffs' exercise of their First Amendment rights in speaking out against RCSD's allegedly discriminatory policies and practices.
 
 
 6
 On July 22, 2002, the district court granted defendants' motion for summary judgment. See Washington v. County of Rockland, 211 F.Supp.2d 507 (S.D.N.Y.2002). The district court concluded that because the crux of plaintiffs' §§ 1981 and 1983 discrimination claims was that defendants selectively maintained disciplinary proceedings against them on account of race, the claims accrued at the time plaintiffs knew, or had reason to know, of the charges, and thus were untimely. See id. at 511. The district court further held that although plaintiffs' malicious prosecution claims were timely, they failed on the merits because a malicious prosecution claim brought under § 1983 could not be maintained where the alleged prosecution occurred in a civil administrative proceeding. See id. at 513. Finally, the district court held that plaintiffs' claims of First Amendment retaliation could not be maintained because plaintiffs failed to establish that they suffered an adverse employment action. See id. at 514.
 
 
 7
 Plaintiffs subsequently filed this timely appeal.
 
 DISCUSSION
 I. Standard of Review
 
 8
 We review the district court's grant of summary judgment de novo. See Lombard v. Booz-Allen & Hamilton, Inc., 280 F.3d 209, 214 (2d Cir.2002). Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Oneida Indian Nation of New York v. City of Sherrill, 337 F.3d 139, 152 (2d Cir.2003). When there are no disputed issues of material fact, "our task is to determine whether the district court correctly applied the law." Mario v. P & C Food Mkts., Inc., 313 F.3d 758, 763 (2d Cir.2002) (internal quotation marks omitted).
 
 II. Malicious Prosecution Claims
 
 9
 The district court concluded that a malicious prosecution claim brought pursuant to 42 U.S.C. § 1983 may not be premised on an administrative disciplinary proceeding. Washington, 211 F.Supp.2d at 512-13. Section 1983 authorizes a court to grant relief when a party's constitutional rights have been violated by a state or local official or other person acting under color of state law. Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); Eagleston v. Guido, 41 F.3d 865, 875 (2d Cir.1994). To establish a constitutional violation under § 1983, plaintiffs must demonstrate that (1) defendants were acting under color of state law at the time of the alleged malicious prosecution; and (2) the action was a deprivation of a constitutional or federal statutory right. Hayut v. State Univ. of New York, 352 F.3d 733, 743-44 (2d Cir.2003). It is undisputed that defendants were Rockland County officials acting under color of state law. The remaining question is whether the initiation and pursuit of the administrative disciplinary charges constituted a deprivation of plaintiffs' federally protected rights for purposes of § 1983.
 
 
 10
 Although § 1983 provides plaintiffs with a federal cause of action, generally we borrow the elements of the underlying malicious prosecution from state law. Cook v. Sheldon, 41 F.3d 73, 79 (2d Cir.1994). Plaintiffs argue that because New York recognizes the tort of civil malicious prosecution, they may base their § 1983 claim on a civil malicious prosecution arising out of administrative disciplinary proceedings. In concluding that administrative disciplinary proceedings were inadequate to support a § 1983 claim for malicious prosecution, the district court relied on Easton v. Sundram, 947 F.2d 1011, 1017 (2d Cir.1991). Washington, 211 F.Supp.2d at 513-14. In Easton, this court noted that because civil proceedings do not implicate the same constitutional rights as criminal proceedings, the mere fact that New York state law recognizes a civil tort of malicious prosecution did not transform plaintiff's claim of civil malicious prosecution "into a constitutional cause of action" redressable under § 1983. Easton, 947 F.2d at 1017. Plaintiffs argue that although Easton suggests that it is unlikely that a civil proceeding could be the basis for a § 1983 claim for malicious prosecution, it did not expressly foreclose such claims. We disagree as fully explained below.
 
 
 11
 The issues presented in Easton are similar to those in the instant case. In Easton, the plaintiff brought suit, pursuant to § 1983, claiming malicious prosecution in the context of a civil proceeding. We noted that "we have never determined whether a state law tort for civil as opposed to criminal malicious prosecution gives rise to a cause of action under § 1983." Id. We further recognized that "[a]lthough we ha[d] previously held that the state tort of malicious criminal prosecution gives rise to a cause of action under § 1983," criminal malicious prosecution generally implicated constitutional rights "not automatically implicated in a malicious [prosecution] civil suit." Id. While we did not foreclose the possibility that "civil prosecution [could] give rise to a cause of action under § 1983," we surmised that, absent official conduct that is conscience-shocking, "it normally will not." Id. at 1018.
 
 
 12
 Since Easton, the landscape of § 1983 malicious prosecution suits has changed. In Albright v. Oliver, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), the Supreme Court, in a plurality opinion, determined that only violations of the Fourth Amendment could support § 1983 claims for malicious prosecution. Id. at 274-75, 114 S.Ct. 807. In so doing, the Court reasoned that the various criminal procedure protections of the Fourth Amendment were intended to protect against arbitrary exercises of prosecutorial power. Thus, only those claims of malicious prosecution that implicated Fourth Amendment rights were appropriate bases for malicious prosecution claims brought under § 1983. Id. at 273, 114 S.Ct. 807.
 
 
 13
 The following year, in Singer v. Fulton County Sheriff, 63 F.3d 110 (2d Cir.1995), we considered the impact of Albright on malicious prosecution claims brought under the auspices of § 1983. Following Albright's reasoning, we observed that "[t]he Fourth Amendment right implicated in a malicious prosecution action is the right to be free of unreasonable seizure of the person — i.e., the right to be free of unreasonable or unwarranted restraints on personal liberty." Singer, 63 F.3d at 116. Accordingly, we concluded that "[a] plaintiff asserting a Fourth Amendment malicious prosecution claim under § 1983 must therefore show some deprivation of liberty consistent with the concept of `seizure.'" Id. Considered in tandem, Singer and Albright stand for the proposition that to sustain a § 1983 malicious prosecution claim, there must be a seizure or other "perversion of proper legal procedures" implicating the claimant's personal liberty and privacy interests under the Fourth Amendment. Id. at 117.
 
 
 14
 Despite Albright and Singer, plaintiffs maintain that they have alleged a viable malicious prosecution claim under § 1983. Specifically, plaintiffs argue that although the disciplinary charges against them were filed in an administrative context, they nonetheless implicate Fourth Amendment rights because plaintiffs could have been criminally prosecuted if found guilty in the administrative proceeding and because the stigma of the disciplinary charges would impede their future advancement within the RCSD. We disagree that these possibilities implicate the Fourth Amendment to such a degree as to permit a § 1983 claim based on a civil administrative proceeding of the type at issue here.
 
 
 15
 The factual circumstances of this case do not rise to the level of a constitutional violation sufficient to warrant redress under § 1983. Plaintiffs were charged in an administrative proceeding, and, critically, were never taken into custody, imprisoned, physically detained or seized within the traditional meaning of the Fourth Amendment. See United States v. Mendenhall, 446 U.S. 544, 553-54, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) (holding that, under standard Fourth Amendment analysis, a person is considered "seized" if he is unable to leave an officer's presence without permission). Although the disciplinary charges included offenses for which plaintiffs could have been criminally prosecuted had they been found guilty in the administrative proceeding, plaintiffs were never the subjects of an actual criminal prosecution. Moreover, although plaintiffs were suspended without pay for thirty days pending the disposition of the disciplinary charges, no seizure or restriction of their personal liberty occurred. See Singer, 63 F.3d at 116 (holding that a complainant asserting a malicious prosecution claim must show some deprivation of liberty consistent with a seizure); Easton, 947 F.2d at 1017 (noting that criminal malicious prosecution typically implicates constitutional rights, such as a deprivation of liberty, which are not attendant in a civil prosecution).
 
 
 16
 As we have noted, our case law does not forbid a § 1983 malicious prosecution claim premised on a civil or administrative proceeding; however, because such claims must, under Albright and Singer, be premised on a violation of Fourth Amendment rights, it is unlikely that a civil proceeding of the kind at issue here would implicate constitutional rights in a manner that would warrant redress under § 1983. Because the circumstances of this case do not constitute a deprivation of liberty sufficient to constitute a violation of plaintiffs' Fourth Amendment rights, plaintiff's malicious prosecution claim fails.
 
 
 17
 III. Timeliness of Plaintiffs' Discrimination Claims
 
 
 18
 In their complaint, plaintiffs allege that defendants discriminated against them in violation of §§ 1981 and 1983, by selectively maintaining administrative disciplinary charges against them on the basis of their race. The district court dismissed these claims, holding that, for purposes of tolling the statute of limitations, plaintiffs' claims accrued "when they were charged with disciplinary violations." Washington, 211 F.Supp.2d at 511. Because the last of the disciplinary charges was filed on August 26, 1997 and plaintiffs did not commence their suit until September 18, 2000 — more than three years later — the district court found plaintiffs' claims untimely.
 
 
 19
 On appeal, no party disputes that the applicable statute of limitations period is three years from the time the claim accrued. See Connolly v. McCall, 254 F.3d 36, 40-41 (2d Cir.2001); Eagleston, 41 F.3d at 871. Nor do they dispute that, under federal law, "[t]he claim accrues when the plaintiff knows or has reason to know of the harm." Eagleston, 41 F.3d at 871 (internal quotation marks and citation omitted). Employing a continuing violation theory, plaintiffs assert that defendants' continued prosecution of the disciplinary charges amounted to an ongoing illegal practice "permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." Plaintiffs maintain that their claims are timely because the prosecution continued until the last of the charges was dismissed in July 1998. Alternatively, plaintiffs argue that under Roesch v. Otarola, 980 F.2d 850 (2d Cir.1992), and abstention principles, "it would have been premature at best for plaintiffs to claim defendants had discriminatorily charged them with misconduct before the hearing officer ruled in their favor." Instead, plaintiffs assert that it was proper to wait until the administrative process was resolved; thus, they argue, the statute of limitations did not begin to run until the administrative process was completed and the disciplinary charges were dismissed. We reject both of plaintiffs' arguments.
 
 A. Continuing Violation Doctrine
 
 20
 Under Title VII's continuing violation doctrine, "if a plaintiff has experienced a continuous practice and policy of discrimination,... the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." Fitzgerald v. Henderson, 251 F.3d 345, 359 (2d Cir.2001) (internal quotation marks and citations omitted). Plaintiffs argue that defendants' decision to prosecute fully the administrative disciplinary charges against them, even though there were evidentiary infirmities underlying the charges, was tantamount to an ongoing policy of discrimination. We disagree.
 
 
 21
 Conduct that has been characterized as a continuing violation is "composed of a series of separate acts that collectively constitute one unlawful employment practice." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 111, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (internal quotation marks omitted); Elmenayer v. ABF Freight Sys., Inc., 318 F.3d 130, 134 (2d Cir.2003). Here, the conduct in question was RCSD's decision to file disciplinary charges against plaintiffs. Such conduct is clearly a single act, discrete in its nature. Although RCSD could have revisited its decision after the charges had been filed, doing so would not have turned the act of filing the charges into a continuous or ongoing policy or practice. The alleged discrimination occurred when RCSD undertook the individual act of initiating disciplinary charges against each plaintiff. Because RCSD's prosecution of the charges to ultimate disposition is wholly separable from the act of initiating the charges, we reject plaintiffs' contention that this series of separate acts should be characterized as an ongoing policy of continuous discrimination sufficient to toll the applicable statute of limitations.[3]
 
 B. Abstention and Roesch v. Otarola
 
 22
 Plaintiffs also assert that under Roesch v. Otarola, 980 F.2d 850 (2d Cir.1992), and abstention principles enunciated in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), they were obliged to wait until the resolution of the administrative disciplinary charges before filing this suit in federal court. They maintain that the three-year statute of limitations should have been tolled until the resolution of the disciplinary charges. Based on the facts presented, we disagree.
 
 
 23
 Under Younger, federal courts, in the interest of comity, must abstain from enjoining pending state court criminal prosecutions and allow state courts to resolve pending matters within their jurisdiction. Younger abstention also has been extended beyond the ambit of state criminal prosecutions to state civil proceedings and administrative proceedings. See Trainor v. Hernandez, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (extending Younger abstention to state civil proceedings where the state government is a party); Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982) (extending Younger abstention principles to state administrative proceedings). Plaintiffs argue that the principles enunciated in Younger and its progeny — comity, deference to state administrative proceedings, and judicial economy — mandate disposition of pending state administrative proceedings prior to filing §§ 1981 and 1983 discrimination claims in federal court. We disagree.
 
 
 24
 We recognize that certain circumstances might militate in favor of abstaining from filing a federal suit until disposition of underlying state administrative proceedings. For example, if the claims raised in federal court would necessarily implicate factual issues pending in the underlying state administrative proceeding, pursuant to Younger and its progeny, the federal suit would be stayed pending disposition of the underlying state proceedings. Here, however, the claims raised in federal court are of a wholly different character from the charges raised in the administrative disciplinary proceedings. In the administrative disciplinary proceedings, the issue was whether plaintiffs distributed contraband items to prisoners. The discrimination claims raised in federal court concerned whether RCSD's decision to file the disciplinary charges against plaintiffs was based on discriminatory animus. Resolution of plaintiffs' federal claims therefore did not implicate issues raised in the administrative disciplinary proceedings. If, however, a state administrative proceeding permitted plaintiffs to assert an affirmative defense of discrimination in response to the filed disciplinary charges, then a stronger argument might be made for resolving the underlying state administrative charges — and the attendant affirmative defense of discrimination — before commencing a discrimination suit in federal court. Here, however, plaintiffs have not alleged any such circumstances that would counsel in favor of delaying the filing of their federal discrimination claims until the resolution of the administrative disciplinary charges.
 
 
 25
 For the same reasons, plaintiffs' reliance on Roesch, 980 F.2d at 853, as a means of tolling the applicable statute of limitations also is misplaced. Under Roesch, a plaintiff seeking to bring a malicious prosecution or false arrest claim must furnish proof that the underlying charges were terminated in his or her favor. Id. (holding that adjournment of criminal charges pursuant to a pretrial rehabilitation program did not constitute a favorable termination for purposes of a malicious prosecution or false arrest claim). Plaintiffs assert that Roesch required that they wait until the administrative disciplinary proceedings were resolved in their favor before filing their discrimination claims in federal court.
 
 
 26
 Plaintiffs' reliance on Roesch is unpersuasive. In their discrimination claims, plaintiffs did not challenge the substance of the administrative disciplinary charges, as would be the case in a malicious prosecution claim. Instead, plaintiffs allege that in deciding to initiate and pursue disciplinary charges against plaintiffs, RCSD engaged in discriminatory conduct. Thus, the crux of plaintiffs' claims is disparate treatment — that white officers were not subjected to the same disciplinary process. The administrative disciplinary proceedings and the federal court claims therefore implicate and seek to resolve different legal issues. Accordingly, there was no need to refrain from filing the federal discrimination claims until the disposition of the administrative disciplinary proceedings.
 
 
 27
 As with all discrimination claims, plaintiffs' claims accrued when they knew or should have known of the discriminatory action. That is, the claim accrued when plaintiffs knew or had reason to know that defendants filed the charges. Accordingly, plaintiffs' §§ 1981 and 1983 discrimination claims accrued on October 28, 1996, July 7, 1997, and on August 26, 1997, when administrative disciplinary charges were filed against each individual plaintiff. When plaintiffs filed this suit on September 18, 2000, the three-year statute of limitations had elapsed, and their discrimination claims were therefore untimely.
 
 IV. First Amendment Retaliation Claim
 
 28
 Plaintiffs, who publicized their criticisms of RCSD's policies by filing discrimination complaints, also allege that defendants subjected them to administrative disciplinary proceedings in retaliation for filing the discrimination complaints. The district court granted RCSD's motion for summary judgment, finding that plaintiffs failed to state a prima facie case of First Amendment retaliation because they had not "alleged any adverse employment action sufficient to implicate their constitutional rights." Washington, 211 F.Supp.2d at 513. On appeal, plaintiffs challenge this ruling, contending that the filing of the disciplinary charges against them constituted an adverse action because it resulted in their suspension without pay, deterred them and other officers from exercising their First Amendment rights, and had a stigmatizing effect that could hinder plaintiffs' opportunities for advancement within RCSD.
 
 
 29
 To state a prima facie case of retaliation under § 1983, a plaintiff must demonstrate that: (1) his or her speech was constitutionally protected; (2) he or she suffered an adverse employment action; and (3) a causal connection exists between the speech and the adverse employment action so that it can be said that the speech was a motivating factor in the determination. Morris v. Lindau, 196 F.3d 102, 110 (2d Cir.1999). Plaintiffs' complaints regarding the allegedly discriminatory treatment of African-American officers within RCSD surely was "a matter of political, social, or other concern to the community," Catletti ex rel. estate of Catletti v. Rampe, 334 F.3d 225, 230 (2d Cir.2003) (internal quotation marks and citation omitted), worthy of First Amendment protection, see Mandell v. County of Suffolk, 316 F.3d 368, 383 (2d Cir.2003) (holding that plaintiff's testimony criticizing police department's approach "to fighting organized crime, its resistance to change, and its systemic racism and anti-Semitism" was a matter of public concern protected by the First Amendment). We now turn to the question of whether the remaining elements of a prima facie case of First Amendment retaliation can be established.
 
 
 30
 The district court concluded that "[t]he maintenance of disciplinary charges and formal hearings against plaintiffs in the instant action does not constitute [an] adverse employment action." Washington, 211 F.Supp.2d at 514. On appeal, plaintiffs argue that this inquiry involved a material issue of fact that should have been reserved for a jury. We agree.
 
 
 31
 In the context of a First Amendment retaliation claim, we have held that "[o]nly retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action." Dawes v. Walker, 239 F.3d 489, 493 (2d Cir.2001). Here, the threat of administrative disciplinary proceedings, and the concomitant thirty-day suspension without pay, see N.Y. Civ. Serv. L. § 75(3) (McKinney's 2000), could have a deterrent effect on other officers who wished to protest the Department's allegedly discriminatory practices and policies. In light of this view, we disagree with the district court's conclusion that the filing of the administrative charges, and the resulting suspension, could not, as a matter of law, constitute an adverse employment action.
 
 
 32
 We nevertheless conclude that plaintiffs have failed to establish a prima facie case of First Amendment retaliation, as they have not established a causal connection between defendants' allegedly retaliatory conduct and plaintiffs' protected speech. To satisfy the causal connection requirement of the prima facie case, plaintiffs must show that their criticisms of RCSD were "a substantial motivating factor" in RCSD's decision to initiate administrative disciplinary charges against them. Deters v. Lafuente, 368 F.3d 185, 190 (2d Cir.2004) (citing Morris, 196 F.3d at 111). To do so, plaintiffs must aver some "tangible proof" demonstrating that their protected speech animated RCSD's decision to initiate disciplinary charges. Id. (internal quotation marks and citations omitted). They "may not rely on conclusory assertions of retaliatory motive." Id.
 
 
 33
 In an attempt to establish the requisite causal connection, plaintiffs maintain that RCSD initiated disciplinary charges against two Hispanic officers — Serrano and Torres — who had also been outspoken critics of the Department's policies. Plaintiffs allege that RCSD later dropped the charges against Serrano and Torres, presumably as a quid pro quo for Torres and Serrano dropping their discrimination complaints against the Department.
 
 
 34
 Absent more, plaintiffs' allegations are insufficient to establish the requisite causal connection between their own protected speech and the initiation of the administrative disciplinary charges. As a threshold matter, there is no record evidence beyond plaintiffs' bald assertions suggesting that either Torres or Serrano filed discrimination charges against the Department, or had otherwise been outspoken in their criticism of the Department's practices and policies. Nor is there any record evidence suggesting that either Torres or Serrano stopped his criticisms against the Department in exchange for having the administrative disciplinary proceedings dismissed. More importantly, plaintiffs' speculation regarding Torres and Serrano does little to establish a nexus between plaintiffs' protected speech and the Department's decision to file disciplinary charges. Absent some record evidence that RCSD and its officials possessed retaliatory animus toward them, plaintiffs cannot succeed in making out a First Amendment retaliation claim based on defendants' decision to file administrative disciplinary charges.
 
 CONCLUSION
 
 35
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 Notes:
 
 
 *
 The Honorable Milton L. Pollack of the United States District Court for the Southern District of New York, sitting by designation
 
 
 [1]
 In their complaint, plaintiffs also named the following persons as defendants: Undersheriff Thomas Guthrie, Detective Dennis Thornton, Detective Kim Saucier, Chief Nicholas Solfaro and Captain William J. Clark. Plaintiffs, however, are proceeding against only the County and Sheriff Kralik on appeal
 
 
 [2]
 The disciplinary proceedings were initiated under § 75 of the New York Civil Service Law (McKinney 2000)
 
 
 [3]
 Insofar as plaintiffs Crump and Pierson argue that under a continuing violation theory, the statute of limitations on their discrimination claims did not begin to run until July 1998, when the last of the disciplinary charges were dismissed, their contention is patently incorrect. If applicable, the continuing violation doctrine would implicate only those acts directly affecting plaintiffs. Here, administrative disciplinary charges were filed against each plaintiff individually and dismissed against each plaintiff individually at different times. Crump and Pierson were not affected by the July 1998 dismissal of charges because those charges did not pertain to them — they dismissed the charges pending against Washington. Because the charges were filed and dismissed against plaintiffs as individuals, we do not consider them collectively for purposes of the continuing violation doctrine