07-2244-cv
Sybalski v. Independent Group Home Living Program

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2008

(Argued: October 8, 2008)                                        Decided: October 15, 2008)

Docket No. 07-2244-cv

MARILYN SYBALSKI, PAUL SYBALSKI, Individually and as Legal Guardians of the Person and Property of Paul Sybalski, II,

*Plaintiffs-Appellants*,

v.

INDEPENDENT GROUP HOME LIVING PROGRAM, INC., WALTER STOCKTON, LISA LOMBARDI, WILLIAM HERRICK, THOMAS TRAKOVAL, CHANELLE SPRUILL,

*Defendants-Appellees.*

Before: NEWMAN, CABRANES, and B. D. PARKER, *Circuit Judges.*

Appeal from a judgment of the United States District Court for the Eastern District of New York (John Gleeson, *Judge*), dismissing plaintiffs' section 1983 action because of plaintiffs' failure to allege state action. Plaintiffs alleged that a private group home facility and its employees restricted plaintiffs' ability to communicate with and visit their son, a resident of the facility. We agree with the District Court that the complaint does not adequately allege state action.

Affirmed.

> ALAN E. WOLIN, Wolin & Wolin, Jericho, NY, *for Plaintiffs-Appellants.*
>
> DAVID M. COHEN, Cooper, Sapir & Cohen, P.C., Melville, NY, *for Defendants-Appellees.*

1

PER CURIAM:

Marilyn and Paul Sybalski appeal from a judgment of the United States District Court for the Eastern District of New York (John Gleeson, *Judge*), dismissing their civil rights action against the corporate owner of a group home for mentally disabled adults and five employees of that corporate entity. *See Sybalski v. Independent Group Home Living Program, Inc.*, No. 06 CV 4899, 2007 WL 1202864 (E.D.N.Y. Apr. 24, 2007). On appeal, the Sybalskis challenge the District Court's dismissal of their claims brought pursuant to 42 U.S.C. § 1983, arguing that their complaint adequately pleaded state action. Because we agree with the District Court that defendants' alleged conduct does not constitute state action, we deny the appeal.

## BACKGROUND

This action arises from a disagreement between the Sybalskis and defendants over the care received by the Sybalskis' son at a group home for adults with mental disabilities. The Sybalskis allege that they made numerous "complaints . . . about the care, protection and services" received by their son at the group home, Compl. ¶ 36, and defendants, in response, "issued letters seeking to punish and intimidate plaintiffs and impose illegal and unlawful restrictions on plaintiffs['] right to visit and communicate with their son," *id.* ¶ 62. Defendants' conduct, according to the Sybalskis, violated the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, the Protection and Advocacy for Individuals with Mental Illness Act, 42 U.S.C. §§ 10801-51, ("PAIMI"), and various provisions of New York state law. Defendants moved pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the action for failure to state a claim upon which relief can be granted, and the District Court granted that motion on April 24, 2007. The District Court held that the Sybalskis' constitutional claims—brought pursuant to 42 U.S.C. § 1983—failed because defendants' alleged conduct could not be attributed to the state and was therefore not actionable under section

2

1983. *Sybalski*, 2007 WL 1202864 , at *5. The District Court dismissed the PAIMI claim on the ground that the statute "creates no privately enforceable federal rights," *id.* at *6 n.6, and declined to exercise supplemental jurisdiction over the state law claims, *id.* at *6. Judgment for defendants was entered on April 30, 2007, and this appeal followed.

## DISCUSSION

On appeal, the Sybalskis challenge the District Court's determination that they failed adequately to plead state action in support of their section 1983 claims.[1] Pursuant to section 1983, anyone acting "under color of any [state] statute, ordinance, regulation, custom, or usage," who causes a United States citizen to be deprived "of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983. The Supreme Court has explained that "[t]he purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). Accordingly, we have held that "[a] plaintiff pressing a claim of violation of his constitutional rights under § 1983 is thus required to show state action." *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003).

For the purposes of section 1983, the actions of a nominally private entity are attributable to the state when: (1) the entity acts pursuant to the "coercive power" of the state or is "controlled" by the state ("the compulsion test"); (2) when the state provides "significant encouragement" to the entity, the entity is a "willful participant in joint activity with the [s]tate," or the entity's functions are "entwined" with state policies ("the joint action test" or "close nexus test"); or (3) when the entity "has

---

[1] The Sybalskis do not challenge on appeal the dismissal of their PAIMI claims or the District Court's decision to decline to exercise supplemental jurisdiction over their state law claims.

been delegated a public function by the [s]tate," ("the public function test"). *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 296 (2001) (citations and internal quotation marks omitted). It is not enough, however, for a plaintiff to plead state involvement in "*some activity* of the institution alleged to have inflicted injury upon a plaintiff"; rather, the plaintiff must allege that the state was involved "with the *activity that caused the injury*" giving rise to the action. *Schlein v. Milford Hospital, Inc.*, 561 F.2d 427, 428 (2d Cir. 1977) (internal quotation marks and citation omitted) (emphases added); *see also United States v. Int'l Bhd. of Teamsters*, 941 F.2d 1292, 1296 (2d Cir. 1991) ("The question is not whether the decision to *establish* the [private entity] was state action, but rather whether the [private entity]'s decision to *sanction* [plaintiffs] may be 'fairly attributable' to the [g]overnment." (*quoting Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982))).

The Sybalskis argue that defendants were state actors under the joint action and public function tests. They contend that "[t]he State, by statute and regulation, has assumed a duty to provide custody, care and habilitative services to its mentally retarded citizens," Appellants' Br. 12, and "[w]here the State chooses to delegate those responsibilities and a private entity assumes them, as here, neither the State nor the private entity may assert that the entity's acts and omissions do not occur under color of state law," *id.* In essence, they argue that the state has undertaken to care for its mentally disabled citizens by (1) acting jointly with defendants to provide care for the mentally disabled and (2) delegating the public function of caring for the mentally disabled to defendants.

Turning first to the joint action test, we agree with the District Court that the complaint has not alleged facts sufficient to show that the restrictions on the Sybalskis' contact with their son were "so governed by state regulation as to be properly attributed to the state." *Sybalski*, 2007 WL 1202864, at *3. We recognize that pursuant to the New York Mental Hygiene Law ("MHL"), facilities licensed by the state to provide care and treatment to the mentally disabled are subject to regulation, licensing, and

4

oversight by the commissioner of mental health and the commissioner of mental retardation and developmental disabilities. *See* N.Y. Mental Hyg. Law §§ 31.01-31.35. Among the rights established and protected by the MHL are the rights to (1) "receive visitors at reasonable times, to have privacy when visited, and to communicate freely with persons within or outside the facility," *id.* § 33.02(a)(9); (2) "bring any questions or complaints, including complaints regarding any orders limiting such residents' rights, to the facility director" and others, *id.* § 33.02(a)(12), and (3) "authorize those family members and other adults who will be given priority to visit consistent with the patient's ability to receive visitors," *id.* § 33.02(a)(13). The MHL further provides that "[t]he foregoing rights may not be limited as a punishment or for the convenience of staff." *Id.* § 33.02(b). In addition, "[a]ny limitation on the rights enumerated shall be permitted . . . only upon written order of a physician . . . [or] by the director or chief executive officer of such facility . . . with such order to be placed in the resident's clinical record." *Id.*

While the state has established substantive rights for patients in mental health facilities and procedures for protecting these rights, those actions, without more, do not amount to "significant encouragement," "willful particip[ation]," or state "entwin[ing]," *Brentwood Acad.*, 531 U.S. at 296, in defendants' decision to restrict the Sybalskis' access to their son. The Supreme Court's holding in *Blum v. Yaretsky*, 457 U.S. 991 (1982), illustrates why this is so. In *Blum*, the Court considered whether the decision of nursing homes to transfer or discharge patients constituted state action in light of the state's requirement that physicians certify the medical necessity of nursing home services on a "long term care placement form" devised by the state. 457 U.S. at 1006. The Court determined that even though the state had created the form for evaluating the medical need of a patient, "the physicians, and not the forms, make the decision about whether the patient's care is medically necessary." *Id.* Accordingly, the Court rejected the argument that "the [s]tate, by requiring completion of a form, is responsible for the

5

physician's decision." *Id.* at 1006-07; *see also Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 57-58 (1999) ("[W]orkers' compensation insurers are at least as extensively regulated as the private nursing facilities in *Blum* . . . . Like th[at] case[ ], though, the state statutory and regulatory scheme leaves the challenged decisions to the judgment of insurers."). The reasoning of *Blum* applies with equal force here. While the State of New York has established *procedures* governing the limitations that mental health facilities place on the ability of patients to receive visitors, the administrators of those facilities make the *decision* about whether such limitations should be imposed. Accordingly, based on the facts alleged in the complaint, the state's involvement in defendants' decision to restrict the Sybalskis' access to their son is insufficient to render that decision "state action" under the joint action test.

With respect to the public function test, we adopt the holding of the District Court that because "care for the mentally disabled was neither traditionally nor exclusively reserved to the state[,] . . . [defendants'] adoption of this function does not make [their] decisions in this regard properly attributable to the state." *Sybalski*, 2007 WL 1202864, at *5. Under the public function test, "the exercise by a private entity of powers traditionally *exclusively* reserved to the [s]tate" can constitute "state action." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974) (emphasis added); *see also Sullivan*, 526 U.S. at 57 (rejecting argument that state had delegated to insurers a "traditionally exclusive public function" to determine whether payment for disputed medical treatment should be suspended). Accordingly, private actors must be delegated functions that were traditionally under the exclusive authority of the state for the public function test to be satisfied.

Like the District Court, we find instructive Judge Sweet's historical analysis of the treatment of the mentally ill in New York State. In *Okunieff v. Rosenberg*, Judge Sweet wrote:

> In New York, there seems to have been little early legislation in reference to the mentally ill, and if they were dependent, they were probably classed among the poor. *See* [Henry M. Hurd et al., 1 *The Institutional Care of the Insane in the United States and Canada* 86 (Johns Hopkins Press

6

1916)].  "The violent and dangerously insane were handled under the authority of the sovereign's police powers."  Samuel J. Brakel et al., *The Mentally Disabled and the Law* 22 (3d ed. 1985).  In 1838, private asylums, county poorhouses, public asylums, and lunatic asylums of the City of New York were recognized by statute.  *See* Hurd, *supra*, at 87.  The care of the mentally ill, however, was not recognized as a public duty, except insofar as it sought to protect the public from violent persons.  *See id.*  Private institutional care predated public institutional care, as it was not until 1842 that laws were passed to erect the first state institution in New York.  *See id.*  The earliest movement toward complete state care did not come until the second half of the nineteenth century.  *See* [Albert Deutsch, *The Mentally Ill in America* 234 (2d ed. 1949)].  In 1874, New York passed a law authorizing any asylum, public or private, institution, home, or retreat that cared for the mentally ill, without court order, to commit for five days any person upon the certificates of two physicians.  1874 N.Y. Laws ch. 446, § 1.  *See* [*Rockwell v. Cape Cod Hosp.*, 26 F.3d 254, 259 (1st Cir. 1994)] (noting similar law passed in Massachusetts).

996 F. Supp. 343, 356 (S.D.N.Y. 1998).  Based on this historical record, we cannot conclude that care of the mentally ill, much less the mentally disabled, was a function "traditionally" and "exclusively" reserved by the state.  *Jackson*, 419 U.S. at 352.  For that reason, defendants' actions cannot be attributed to the state under the public function test.

## CONCLUSION

Because the restrictions imposed by defendants on the Sybalskis' ability to communicate with their son cannot be attributed to the state, defendants cannot be held liable under section 1983.  The judgment of the District Court dismissing the complaint is **AFFIRMED.**