Mario SCLAFANI and Braulio Baeza, Plaintiffs,

v.

Eliot SPITZER, Individually, The New York Racing Association, Inc., Assistant Deputy Attorney General John Dormin, Individually, Assistant Attorney General Meryl Ann Lutsky, Individually, Paul Borella New York State Police Investigator, Individually, Safir Rosetti, LLC, Fred Baldino, Individually, and David Samuel, Individually, Defendants.

No. 08–CV–3654 (JBW).

United States District Court, E.D. New York.

Aug. 27, 2010.

290

Addabbo & Greenberg, Forest Hills, NY, by Todd D. Greenberg, Jonathan I. Edelstein, Esq., New York, NY, Der Ohannesian & Der Ohannesian, Albany, NY, by Paul Der Ohannesian, II, Esq., for Plaintiffs.

New York State Department of Law, New York, NY, by Daniel Schulze, Esq., for Defendants.

Cozen & O'Conner, New York, NY, by Russell V. Wheeler, Esq., Richard Fama, for Safir Defendants.

## MEMORANDUM, ORDER & JUDGMENT

JACK B. WEINSTEIN, Senior District Judge:

I. Introduction .................................................................291

II. Facts and Procedural History ..............................................292
 A. Parties .................................................................292
 B. Procedural History.......................................................293
 C. NYRA/Safir Investigation.................................................293
 1. Baldino Alerts Borella to Potential Improprieties ...................293
 2. Meetings Between Safir Defendants and State Defendants..............294
 D. State's Investigation ...................................................294
 1. Surveillance of Jockey Room at Saratoga .............................294
 2. Surveillance of Jockey Room at Aqueduct and Belmont..................294
 E. Indictments and Dispositions ............................................294
 F. Request for Additional Discovery ........................................295

III. Law .......................................................................295
 A. Summary Judgment.........................................................295
 1. Rules 56(c) and (e) .................................................295
 2. Rule 56(f) ..........................................................295
 B. Immunity for Government Officials........................................296
 1. Absolute ............................................................296
 2. Qualified ...........................................................297
 C. Liability under Section 1983 for Private Actors Under Color of State Law.....297
 D. Conspiracy with Public Officials ........................................297
 E. Malicious Prosecution under New York Law and Section 1983 ...............297
 1. Liability for Individuals ...........................................297
 a. Initiation of a Criminal Proceeding ............................298
 b. Probable Cause .................................................298
 c. Actual Malice ..................................................299
 d. Favorable Termination ..........................................299
 2. Vicarious Liability..................................................299
 F. "Stigma–Plus" Claim Under Section 1983 ..................................299

IV. Application of Law to Facts ................................................300
 A. Immunity for Government Officials........................................300
 1. Absolute ............................................................300
 2. Qualified ...........................................................301
 B. Liability under Section 1983 for Private Actors under Color of State Law.....301
 C. Conspiracy with Public Officials ........................................302
 D. Organization's Liability for Torts Committed by Employees ...............302
 E. Malicious Prosecution ..................................................302
 F. Stigma Plus .............................................................302

V. Conclusion .................................................................305

## I. Introduction

Plaintiffs Mario Sclafani and Braulio Baeza, former employees of the New York Racing Association ("NYRA"), sued a former New York State Attorney General and other government officials, described below, pursuant to Section 1983 of Title 42 of the United States Code. *See, infra,* Part II.A (describing State defendants). They raise federal constitutional and pendent

state claims. Improper criminal investigations and prosecutions in state court were, they allege, based on trumped up charges that plaintiffs defrauded the betting public and owners of horses by allowing jockeys to ride while weighing more than is permitted by New York law, by keeping false records, and by accepting bribes.

The defendants' alleged motives: the NYRA pursued them to demonstrate to state and federal officials that it was committed to cleaning up horse racing; and others prosecuted them for political public relations advantages to further their careers. At the time of the State's investigation, the NYRA was facing possible federal prosecution. Its license to operate horse races was about to expire. It hired a private investigative firm, Safir Rosetti, to investigate possible fraud, and contacted New York State Investigators.

Plaintiffs seek $100,000,000 in compensatory damages and $100,000 in punitive damages. Attorneys' fees are requested.

Immunity and other defenses require dismissal. Although prosecutors are not always unblemished or free of any personal motive, they must have wide discretion to ensure that spectator sports remain as unsullied as possible. A court is not in a position to determine their aspirations by psychoanalyzing public officials—that is the role of the voter. Government officials and quasi-public organizations, including the NYRA, require a large degree of freedom in utilizing private investigators to ferret out illegality and in taking appropriate prophylactic and purification precautions. Here, they violated no right of plaintiffs in carrying out their duties.

For the reasons stated below summary judgment is granted against plaintiffs. The case is dismissed. No reasonable juror could fail to find for all the defendants.

## II. Facts and Procedural History

### A. Parties

Plaintiffs were employees of the NYRA. Compl. ¶¶ 6, 7. Sclafani was a Clerk of the Scales. *Id.* Baeza was an Assistant Clerk of the Scales. *Id.* N.Y. Comp. Codes R. & Regs. tit. 9, § 4023.4(c). The NYRA is a private non-profit quasi-governmental actor, against whom the complaint was voluntary dismissed. The other defendants are adequately described by their titles or were privately employed by those charged with protecting the public against misfeasance at the race tracks.

Together with others, plaintiffs were responsible for weighing jockeys before races to see that they did not ride "overweight." A jockey more than two pounds overweight needs permission to race from the owner of the horse. N.Y. Comp. Codes R. & Regs. tit. 9 § 4033.5. A jockey more than five pounds overweight is not allowed to race. N.Y. Comp. Codes R. & Regs. tit. 9 § 4033.6.

There are four New York State Government defendants. Eliot Spitzer was the Attorney General of New York when the acts charged were allegedly committed. Compl. ¶ 8. He supervised the conduct of the other State defendants. *Id.* ¶ 75. Assistant Deputy Attorney General John Dormin and Assistant Attorney General Meryl Ann Lutsky were assigned to the plaintiffs' prosecution. *Id.* ¶¶ 9–10, 82. Paul Borella investigated the plaintiffs as a New York State Police Officer. *Id.* ¶ 11.

The NYRA retained Safir Rosetti, LLC, a private investigative firm, to conduct a broad integrity review of the organization's policies, procedures, and operations. Fred Baldino and David Samuel were Safir's employees. An NYRA board member alerted Safir to possible improprieties involving procedures used to weigh jockeys at NYRA racetracks and concerns that

accurate jockey weights were not being recorded.

## B. Procedural History

The plaintiffs advanced claims against the firm and two of its investigators, Fred Baldino and David Samuel, who assisted in the investigation and prosecution (Safir Rosetti, LLC, Baldino and Samuel, collectively hereinafter "Safir defendants"). *Id.*

All defendants moved for dismissal of all claims. *See* Gov't Mem. Supp. Mot. Dismiss ("Gov't Br."), Feb. 20, 2009, Docket Entry No. 30; Safir's Mem. Supp. Mot. Dismiss ("Safir's Br."), Feb. 20, 2009, Docket Entry No. 32. *See also* Gov't Reply Mem. Supp. Mot. Dismiss ("Gov't Reply"), Apr. 5, 2010, Docket Entry No. 104; Safir's Reply Mem. Supp. Mot. Dismiss ("Safir's Reply"), Apr. 6.2010; Docket Entry No. 106. By court order, the motion was converted to one for summary judgment. Order, Apr. 24, 2009, D.E. No. 37.

At argument, *see* Hr'g Tr. Apr. 12, 2010, plaintiffs consented to dismissal of their claims for false arrest, abuse of process, denial of a fair trial and denial of equal protection. They "have withdrawn [ ] all but their malicious prosecution claim under Section 1983, and . . . New York State Law." *Id.* at 26 (claiming a conspiracy between the private and state defendants); *see also* Pls.' Mem. in Opp. to Defs.' Mot. Dismiss ("Pls.' Br."), Mar, 12, 2010, Docket Entry No. 102, at 1 n. 2. They also oppose dismissal of their "stigma plus" due process claims and their federal and state malicious prosecution claims. *See Id.* at 17–56. Considered and determined by the court to be without merit were the original claims for denial of equal protection of the law, false arrest, malicious abuse of process, and denial of a fair trial. Any other possible claims would be frivolous. No basis for an amended complaint exists.

## C. NYRA/Safir Investigation

Samuel and Baldino obtained NYRA approval to establish video and physical surveillance of the jockey rooms. During the winter 2004 racing season, a camera was placed in the New York City Aqueduct track jockey room. On the video feed Baldino observed the weigh-out of jockeys to be quick, and he noticed that the needle did not come to a complete rest. He reported those observations to Samuel. On one or two occasions, they observed a jockey place a small unidentified object into the jacket pocket of the person recording the jockey weights at a desk next to the scales.

When the meet moved to the Belmont track the camera followed. Baldino transferred it to the Belmont jockey room, and obtained authority from Samuel to add another camera directly above the scale. Baldino observed the weigh-out process to be quick and recalled one instance in which the weight shown by the scale appeared to exceed what he thought was listed for that jockey in the racing program.

### 1. Baldino Alerts Borella to Potential Improprieties

At Samuel's request, Baldino phoned Borella on June 4, 2004 to advise him of the initial information the Safir defendants had received about possible improprieties in weighing jockeys. Borella testified that he was already aware of this "evidence," having been advised by a confidential source in early 2004 of allegations that jockeys were being allowed to ride overweight. Baldino's deposition revealed that he did not tell Borella that jockeys were bribing the clerk of scales, and that he neither asked Borella to take any action with respect to the investigation nor told Borella that he would do so.

### 2. Meetings Between Safir Defendants and State Defendants

Safir and his associates reported their observations to state officials at June 23, June 30 and July 31, 2004 meetings. After this last meeting, the Safir group had no substantial contact with the investigation.

### D. State's Investigation

#### 1. Surveillance of Jockey Room at Saratoga

The State's investigation began without Safir and focused on the Saratoga track and jockey room. Electronic and physical surveillance at Saratoga continued through August 2004. It was based in part on Borella's affidavits, which described the investigation's findings with fair accuracy.

#### 2. Surveillance of Jockey Room at Aqueduct and Belmont

Electronic surveillance was conducted at Aqueduct from October 2004 to December 2004. An eavesdropping order expired on August 26, 2004.

### E. Indictments and Dispositions

In 2003, the NYRA was charged in the Federal District Court for the Eastern District of New York with filing false statements and defrauding the United States. Compl. ¶ 27. On December 10, 2003, the NYRA entered into a deferred prosecution agreement with the government, agreeing to make various organizational changes and to pay a fine. Id. ¶¶ 28, 29. The NYRA's license to operate horse races was scheduled to expire on December 31, 2007. Id. ¶ 43. The plaintiffs allege that complying with the deferred prosecution agreement was "critical" to the NYRA's efforts to renew their lucrative license. Id. ¶ 44.

On February 13, 2008, the NYRA's franchise was extended for an additional twenty-five years by statute. N.Y. Rac. Pari-Mut. Wag & Breed. Law § 206. On Sep-tember 21, 2005, eight days after the indictment against the NYRA was dismissed, New York brought a 291–count indictment against the plaintiffs in Saratoga County; they were arrested. Id. ¶¶ 32, 33, 42. They were charged with one count of conspiracy, two counts of first degree scheme to defraud, three counts of third degree grand larceny, two counts of fourth degree grand larceny, sixty-seven counts of petty larceny, seventy-two counts of second degree tampering with a sports contest, and 144 counts of first degree falsifying business records. Id. ¶ 33. The gist of the charges was that the plaintiffs defrauded the betting public and owners of horses by failing to disclose that jockeys were overweight. Id. ¶¶ 34–40.

Plaintiffs contend, as indicated above, that the investigation and prosecution were brought maliciously to advance the political, professional, personal, and financial interests of each of the defendants. Id. ¶¶ 127, 155. They link the investigation to the NYRA's desire to clean up its image and secure another horse-racing license. Id.

On March 20, 2007, the Saratoga County Court dismissed three counts of third degree grand larceny, two counts of fourth degree grand larceny, sixty-seven counts of petty larceny and one count of first degree scheme to defraud. Compl. ¶ 105. The court found that "no such evidence [of those crimes] was presented to the Grand Jury." Id. He also noted that "the People concede that there was no evidence that either [plaintiff] received any consideration, either monetary or otherwise from the jockeys or from anyone else for allowing the jockeys to ride on all of these occasions." Id.

The trial on the remainder of the counts began on September 4, 2007. Id. ¶ 107. The plaintiffs' allegations that the evidence introduced at trial was manufactured and

that the prosecution was politically motivated, *id.* ¶¶ 111–15, is supported by grand jurors' public statements to this effect. *Id.* ¶¶ 99–100. One wrote to a prosecutor, "[i]t seems that you have your scapegoats on the line now and nothing else is important." *Id.* at ¶ 99. Another told a newspaper that "[the State defendants] got what they wanted. They got the publicity, they got the two peons, and then the whole thing just disappeared. In my personal opinion, it was nothing more than political grandstanding." *Id.* at ¶ 100 (citing Kenneth Lovett & Ed Fountaine, *Eliot Way Off 'Track', New York Post*, Feb. 26, 2006).

On September 17, 2007, the state criminal court found "that no evidence has been presented with regard to any conspiracy or acts in furtherance of conspiracy committed by either [accused] in Saratoga County." *Id.* ¶ 116. It also determined that the scale used to weigh the jockeys was not properly calibrated. It then dismissed all charges relating to crimes that allegedly took place in Saratoga County. *See* Hr'g Tr., pp. 26. The charges for crimes that allegedly took place elsewhere were dismissed because of a lack of the Saratoga court's jurisdiction. *Id.*

### F. Request for Additional Discovery

Plaintiffs seek leave to conduct additional discovery. *See* Pls.' Br. 17–56; Affirmation Pursuant to Rule 56(f) ("Pls. 56(f) Aff."), Mar. 12, 2010, Docket Entry No. 102–1. The magistrate judge has closely supervised discovery. Requests for discovery based on "speculation as to what potentially could be discovered" should be denied. *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir.1994); *see also Nat'l Union Fire Ins. Co. of Pittsburgh v. The Stroh Companies, Inc.*, 265 F.3d 97, 117 (2d Cir.2001). All relevant facts and evidence have been fully revealed. Further discovery is not warranted.

### III. Law

#### A. Summary Judgment

##### 1. Rules 56(c) and (e)

Summary judgment is appropriate if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 84 (2d Cir.2004). Dismissal is warranted when after construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor, there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c); *see Anderson*, 477 U.S. at 247–50, 255, 106 S.Ct. 2505; *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir.2009).

The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir.1995). If the moving party appears to meet this burden, the opposing party must produce evidence that raises a material question of fact to defeat the motion. *See* Fed. R. Civ. P.R. 56(e). "Mere conclusory allegations, speculation, or conjecture" will not suffice. *Cifarelli v. Village of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996); *see also Delaware & Hudson Ry. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir.1990).

##### 2. Rule 56(f)

"Caution should be exercised in granting summary judgment when the nonmoving party lacks relevant discovery." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 573 (2d Cir.2005); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322,

106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment may be denied or delayed "[i]f a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(f). The affidavit must explain: "(1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what efforts the affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." *Hudson River Sloop Clearwater, Inc. v. Dept. of Navy*, 891 F.2d 414, 422 (2d Cir. 1989) (quotation marks omitted).

## B. Immunity for Government Officials

### 1. Absolute

 Prosecutors are absolutely immune from suits for acts taken in their role as advocates. *See Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). Whether a prosecutor is protected by absolute immunity depends on "the nature of the function performed." *Forrester v. White*, 484 U.S. 219, 228, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). Absolute immunity applies when a prosecutor undertakes actions prior to or during trial that are "intimately associated with the judicial phase of the criminal process." *Van de Kamp v. Goldstein*, —— U.S. ——, 129 S.Ct. 855, 861, 172 L.Ed.2d 706 (2009) (citation omitted). Prosecutors engaged in actions that are separated from the conduct of a trial, such as administrative tasks, enjoy the lesser protection of qualified immunity. *See id.* at 860, 862; *Warney v. Monroe County*, 587 F.3d 113, 120–21 (2d Cir.2009); *Newton v. City of New York*, 681 F.Supp.2d 473, 493 (S.D.N.Y. 2010); *see also infra* Section III.B.2.

 Police and other law enforcement officers generally enjoy absolute immunity from suit based on the substance of their testimony in judicial and quasi-judicial proceedings. *Briscoe v. LaHue*, 460 U.S. 325, 333, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983) (trial testimony); *Rolon v. Henneman*, 517 F.3d 140, 145 (2d Cir.2008) (arbitration). An exception has been carved out for officers testifying as "complaining" witnesses. *See Malley v. Briggs*, 475 U.S. 335, 340–41, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); *White v. Frank*, 855 F.2d 956, 961(2d Cir. 1988). "[A] complaining witness is one who actively investigated or encouraged the prosecution of the plaintiff," *Manganiello v. City of New York*, 2008 WL 2358922, *7 (S.D.N.Y. June 10, 2008) (citation and quotation marks omitted), such as submitting an affidavit in support of a search or eavesdropping warrant, *see, e.g., Malley*, 475 U.S. at 340, 106 S.Ct. 1092 (application for arrest warrant); *Walczyk v. Rio*, 496 F.3d 139 (2d Cir.2007) (application for search warrant). Complaining witnesses are entitled only to qualified immunity. *Id.* This exclusion extends to grand jury testimony of an officer who participates in initiating a baseless prosecution, *see White v. Frank*, 855 F.2d 956 at 958–62; *Johnson v. City of New York*, 2008 WL 2971772, *2 (S.D.N.Y.2008); *Manganiello*, 2008 WL 2358922, at *8. *But see Wilson v. Emond*, No. 3:08–CV–1399, 2009 WL 1491511, *3 (D.Conn. May 28, 2009) (finding that giving false grand jury testimony, standing alone, renders an officer a complaining witness).

"[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns v. Reed*, 500 U.S. 478, 486, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). "[O]nce a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused[.]" *Bernard v. County of Suffolk*, 356 F.3d 495, 503 (2d

Cir.2004) (citation omitted). "[S]ometimes such immunity deprives a plaintiff of compensation that he undoubtedly merits." *Van de Kamp*, 129 S.Ct. at 864.

### 2. Qualified

■ Prosecutors and police officers "performing discretionary functions generally are granted a qualified immunity and are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *See Wilson v. Layne*, 526 U.S. 603, 614, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (citation and internal quotation marks omitted).

■ Qualified immunity does not require probable cause, but rather "arguable probable cause," meaning that "it was objectively reasonable for the officer to believe that probable cause existed" or that "officers of reasonable competence could disagree on whether the probable cause test was met." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir.2004) (internal quotation marks omitted); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

### C. Liability under Section 1983 for Private Actors Under Color of State Law

■ A plaintiff may only recover under Section 1983 for injury caused by a state actor or a private party acting under color of state law. *See Washington v. County of Rockland*, 373 F.3d 310, 315 (2d Cir.2004); *Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d Cir.2002). Private conduct, no matter how discriminatory or wrongful, is generally beyond the reach of Section 1983. *Brentwood Academy v. Tennessee*, 531 U.S. 288, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001); *United States v. Morrison*, 529 U.S. 598, 621, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000).

■ Salient factors in determining whether a private individual "could be described in all fairness as a state actor" for purposes of Section 1983 include 1) "the extent to which the actor relies on government assistance and benefits," 2) "whether the actor is performing a traditional government function," and 3) "whether the injury caused is aggravated in a unique way by the incidents of governmental authority." *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 620–22, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991); *see also Sybalski v. Independent Group Living Program, Inc.*, 546 F.3d 255, 257–58 (2d Cir.2008) (describing similar tests used to assess conduct of private entities).

### D. Conspiracy with Public Officials

The "state action" requirement is met where "[p]rivate persons [are] jointly engaged with state officials in the prohibited action." *United States v. Price*, 383 U.S. 787, 794, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966). Such conduct "does not require that the accused be an officer of the State," but only that he be "a willful participant in joint activity with the State or its agents." *Id.*

■ Conspiratorial liability under Section 1983 requires 1) "an agreement between the state [actor] and private party," 2) "to act in concert to inflict an unconstitutional injury," and 3) "an overt act done in furtherance of the goal causing damages." *Ciambriello*, 292 F.3d at 324–25. "[M]erely conclusory allegation[s] that a private entity acted in concert with a state actor does not suffice to state a [Section] 1983 claim against the private entity." *Id.*

### E. Malicious Prosecution under New York Law and Section 1983

#### 1. Liability for Individuals

■ Under New York law, a malicious prosecution claim requires "1) that the de-

fendant initiated a prosecution against the plaintiff," 2) "the defendant lacked probable cause to believe the proceeding could succeed," 3) "the defendant acted with malice," and 4) "the prosecution was terminated in the plaintiff's favor." *Rohman v. N.Y.C. Transit. Auth.*, 215 F.3d 208, 215 (2d Cir.2000) (citation omitted); *see also Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir.2003); *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir.2003); *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir.2003); *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir.2003); *Colon v. City of New York*, 60 N.Y.2d 78, 468 N.Y.S.2d 453, 455 N.E.2d 1248, 1250 (1983).

■ To state a section 1983 malicious prosecution claim, a plaintiff must demonstrate "a seizure or other 'perversion of proper legal procedures' implicating the claimant's personal liberty and privacy interests under the Fourth Amendment." *Washington v. County of Rockland*, 373 F.3d 310, 316 (2d Cir.2004) (holding plaintiffs charged in administrative proceeding and never detained or imprisoned did not constitute sufficient deprivation of liberty to constitute a seizure within Fourth Amendment) (citing *Singer v. Fulton County Sheriff*, 63 F.3d 110 (2d Cir.1995)). Plaintiffs, who were placed on restricted travel and required to attend many court appearances over the course of two years, were "seized" within the meaning of the Fourth Amendment. *See Rohman*, 215 F.3d at 216 (forced court appearances sufficient to constitute Fourth Amendment "seizure"); *Murphy v. Lynn*, 118 F.3d 938, 946 (2d Cir.1997) (forced travel restrictions sufficient to constitute Fourth Amendment "seizure"). *But cf. Burg v. Gosselin*, 591 F.3d 95, 98 (2d Cir.2010) (pre-arraignment summons insufficient to constitute Fourth Amendment "seizure").

### a. Initiation of a Criminal Proceeding

A defendant initiates a criminal proceeding when he "play[s] an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act. The mere reporting of a crime . . . and giving testimony are insufficient." *Rohman*, 215 F.3d at 217. Defendant police officers have been found to satisfy this requirement by "filling out complaining and corroborating affidavits, and by signing felony complaints." *Williams v. City of New York*, No. 06–CV–6601, 2009 WL 3254465, *8 (E.D.N.Y. Oct. 9, 2009) (citation and quotation omitted); *see Rutigliano v. City of New York*, No. 07–CV–4614, 2008 WL 110946, *3 (S.D.N.Y.2008) (officer's provision of false testimony as complaining witness constitutes initiation of criminal proceeding). A defendant must, at a minimum, request prosecution. *See, e.g., Mejia v. City of New York*, 119 F.Supp.2d 232, 272 (E.D.N.Y.2000) (no initiation of criminal proceedings where defendants "simply went to prosecutors and related the facts as they honestly believed them to be and then let the prosecutor make his or her determination whether to commence proceedings"); *Osuna v. City of New York*, No. 08–CV–4759, 2009 WL 2356424, *4 (S.D.N.Y. July 30, 2009) (no initiation of criminal proceedings where an officer "did nothing more than report an alleged crime and disclose all material information within his knowledge"); *Hanly v. Powell Goldstein, LLP*, No. 05–CV–5089, 2007 WL 747806, *5 (S.D.N.Y. Mar. 9, 2007) (no initiation of criminal proceedings where "civilian defendant merely furnishes information to law enforcement authorities who are then free to exercise their own independent judgment as to whether an arrest will be made and criminal charges filed").

### b. Probable Cause

■ The existence of probable cause "is a complete defense to a claim of mali-

cious prosecution." *Savino,* 331 F.3d at 72. "Probable cause consists of such facts and circumstances as would lead a reasonably prudent person in like circumstances to believe plaintiff guilty." *Kilburn v. Village of Saranac Lake,* 2010 WL 1235576, *6 (N.D.N.Y. Mar. 31, 2010) (quotation and citation omitted); *see also Osuna,* 2009 WL 2356424, at *4 ("[P]robable cause to arrest is sufficient for probable cause to prosecute unless facts come to light between the arrest and arraignment that vitiate the probable cause.") (citation omitted).

 An "indictment by grand jury creates a presumption of probable cause that may *only* be rebutted by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Savino,* 331 F.3d at 72 (citation and internal quotation marks omitted); *see also Hartman v. Moore,* 547 U.S. 250, 260–66, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006); *Green v. Montgomery,* 219 F.3d 52, 60 n. 2 (2d Cir.2000). The plaintiff bears the burden of rebutting this presumption. *See Rothstein v. Carriere,* 373 F.3d 275, 284 (2d Cir.2004); *Boyd v. City of New York,* 336 F.3d 72, 76 (2d Cir.2003). "Mere conjecture and surmise that an indictment was procured as a result of conduct undertaken by defendants in bad faith cannot overcome the presumption of probable cause created in an indictment." *Gil v. County of Suffolk,* 590 F.Supp.2d. 360, 369 (E.D.N.Y.2008).

### c. Actual Malice

"Actual malice" requires "that the defendant . . . commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." *Lowth v. Town of Cheektowaga,* 82 F.3d 563, 573 (2d Cir. 1996). "Only where probable cause to initiate a proceeding is . . . totally lacking may malice reasonably be inferred." *Wilson v. McMullen,* No. 07–CV–948, 2010 WL 1268055, *6 (E.D.N.Y. Mar. 30, 2010) (quotation and citation omitted).

### d. Favorable Termination

The plaintiff carries the burden of "demonstrate[ing] a final termination that is not inconsistent with innocence." *Rothstein,* 373 F.3d at 286. "Where a criminal prosecution does not result in acquittal, termination of the action is deemed to have been in the plaintiff's favor only if the final disposition is one that indicates his innocence. . . . [T]he critical inquiry is whether the failure to proceed implies a lack of reasonable grounds for the prosecution." *Watson v. Cieslak,* No. 09–CV–2073, 2010 WL 93163, *7 (S.D.N.Y. Jan. 11, 2010) (*citing Fulton v. Robinson,* 289 F.3d 188, 196 (2d Cir.2002)). *See also* 59 N.Y. Jur. 2d § 68 (2010) ("A termination other than on the merits is sufficiently favorable if it fairly implies a lack of reasonable ground for the prosecution.").

### 2. Vicarious Liability

 Vicarious liability is available for a malicious prosecution claim. It is not for a section 1983 claim. Private employers are not liable under section 1983 for the constitutional torts of their employees . . . unless the plaintiff proves that "[the] action[,] pursuant to official . . . policy of some nature[,] caused a constitutional tort." *Rojas v. Alexander's Dep't Store,* 924 F.2d 406, 408 (2d Cir.1990) (citations omitted).

### F. "Stigma–Plus" Claim Under Section 1983

 "Stigma plus" claims are recognized under section 1983. In *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the Supreme Court held that injury inflicted by government officials to a person's "reputation alone" is insufficient to entitle a plaintiff to process

to rehabilitate his or her reputation. *Id.* at 711–12, 96 S.Ct. 1155. Nevertheless, "loss of [a plaintiff's] reputation can ... invoke the protections of the Due Process Clause if that loss is coupled with the deprivation of a more tangible interest." *Patterson v. City of Utica,* 370 F.3d 322, 330 (2d Cir.2004) (citing *Bd. of Regents v. Roth,* 408 U.S. 564, 572–73, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). This type of contention is known as a "stigma plus" claim. *Id.*

The requirement of a more tangible harm in addition to defamation is known as a plus factor, including "the deleterious effects which flow directly from a sullied reputation .... [such as] the impact that defamation might have on job prospects, or romantic aspirations, friendships, self-esteem, or any other typical consequence of a bad reputation." *Valmonte v. Bane,* 18 F.3d 992, 1001 (2d Cir.1994). But cf. *Neu v. Corcoran,* 869 F.2d 662, 667 (2d Cir.1989).

A clear case for "stigma plus" relief would show termination from government employment. *See Valmonte,* 18 F.3d at 1001 ("[D]efamation in conjunction with termination of government employment is the clear situation that satisfies the stigma plus test.") (internal quotations omitted). A plaintiff may be entitled to relief, for example, when a tangible burden is placed on his or her future job prospects by the "operation of law." *See id.* (holding inclusion of plaintiff's name on a government administered Central Register of suspected child abusers, which interfered with plaintiff's ability to work in the child care field, sufficient to maintain a *Bivens* action).

## IV. Application of Law to Facts
### A. Immunity for Government Officials
#### 1. *Absolute*

■ The State defendants contend that all of the claims relating to Attorney Gen-

eral Spitzer, Assistant Deputy Attorney General John Dormin and Assistant Attorney General Meryl Ann Lutsky (hereinafter "AG Defendants") in their roles as advocates are barred by the doctrine of absolute prosecutorial immunity. In opposition, plaintiffs assert that:

1) The AG Defendants suppressed exculpatory statements made by jockeys and other individuals with knowledge of the situation from the grand jury. Several jockeys alleged to have ridden overweight told investigators that they rode at the proper weight, and that they were unaware of any jockeys riding overweight. Compl. ¶ 77.

2) Defendant Lutsky submitted an affidavit in support of an eavesdropping warrant. *Id.* ¶ 58. This affidavit omitted material information and other less intrusive means existed to investigate the plaintiffs. *Id.* ¶ 62.

3) The AG Defendants tampered with and coerced witnesses. *Id.* ¶ 13 1.

4) The AG Defendants manufactured and presented false information to investigators and grand juries. *Id.*

5) The AG Defendants maliciously initiated the suit against the plaintiffs. *Id.* ¶ 146.

6) The AG Defendants conspired with others to commit these acts. *Id.* ¶ 132.

Government officials acted reasonably based on the observational and other apparently reliable evidence they had. The investigators took reasonable steps to obtain that evidence. Taking into account the fact that the horse racing industry is traditionally prone to suspicion of cheating, all defendants acted reasonably to punish and deter fraud.

Prosecutors are not protected from section 1983 liability for misconduct commit-

ted in their roles as administrators or investigators, which could reasonably be foreseen to lead to the plaintiffs' indictment and arrest. The plaintiffs allege that there are many such instances of investigatory misconduct by the plaintiffs. These include allegations that the defendants Lutsky and Dormin assisted in the "preparation and utilization of false and misleading evidence." Compl. ¶ 71. Defendant Lutsky also is charged with omitting material evidence in an affidavit in support of an eavesdropping warrant. *Id.* ¶ 62. There are also general contentions that the defendants tampered with witnesses and manufactured false evidence. *Id.* ¶ 131.

Instances of such misconduct are investigatory in nature, to which absolute immunity does not attach. *See Buckley v. Fitzsimmons,* 509 U.S. 259, 272–276, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993) (prosecutors not protected by absolute immunity for manufacturing evidence); *Zahrey v. Coffey,* 221 F.3d 342, 346–47 (2d Cir.2000) ("[I]ntimidating and coercing witnesses into changing their testimony is not advocatory. It is rather a misuse of investigative techniques.... When a prosecutor performs an investigative or administrative function rather than a prosecutorial one, absolute immunity is not available.") (citations omitted); *Liffiton v. Keuker,* 850 F.2d 73, 77 (2d Cir.1988) (holding that applying for a wiretap warrant is not an act to which absolute immunity applies). *But cf. Imbler,* 424 U.S. at 430, 96 S.Ct. 984 (prosecutors entitled to absolute immunity for initiating prosecution).

The plaintiffs have not supported any of their claims with evidence sufficient to raise a genuine issue of material fact. Their contentions amount to little more than a "litany of general conclusions that shock but have no meaning." *Barr v. Abrams,* 810 F.2d 358, 362–63 (2d Cir. 1987). Such "[c]onclusory allegations will

not suffice to create a genuine issue" of material fact. *Delaware & Hudson Ry. v. Consolidated Rail Corp.,* 902 F.2d 174, 178 (2d Cir.1990).

### 2. Qualified

 Plaintiffs have failed to rebut the presumption of probable cause created by the grand jury indictment. This presumption may only be rebutted by evidence that the indictment was procured by "fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Savino,* 331 F.3d at 72. Their "unsupported conclusory allegations" are insufficient to rebut this presumption.

The evidence gathered by Safir and his associates would appear to a reasonable investigator to be incriminatory. It was properly relied upon. *See, e.g., Caldarola v. Calabrese,* 298 F.3d 156, 166 (2d Cir. 2002) (holding government investigators entitled to qualified immunity for relying on private investigator evidence where there was no reason to question the evidence's veracity).

Even assuming that the defendants' statements in affidavits supporting their application for an eavesdropping warrant were false—and they appear not to have been—they were not material. Where, as in this case, "the evidence, viewed in the light most favorable to the plaintiffs, discloses no *genuine* dispute that a magistrate would have issued the warrant on the basis of the 'corrected affidavits,' then under the ordinary standard for summary judgment ... a qualified immunity defense must be upheld." *Velardi v. Walsh,* 40 F.3d 569, 574 (2d Cir.1994) (citations omitted).

### B. Liability under Section 1983 for Private Actors under Color of State Law

The defendants concede that the plaintiffs' alleged injuries "resulted from the

exercise of right or privilege having its source in state authority." Safir Br. at 28 (quoting *Edmonson*, 500 U.S. at 620, 111 S.Ct. 2077). There are two possible analyses of the Safir position. Under neither would they be liable.

First, a private party may be held liable for malicious prosecution if a plaintiff establishes that the defendant maliciously initiated proceedings against him without probable cause. *See Pinsky v. Duncan*, 79 F.3d 306, 312 (2d Cir.1996) (holding that plaintiff that establishes "want of probable cause, malice and damages" states a section 1983 malicious prosecution claim in the context of invoking prejudgment attachment statutes). The Safir defendants investigation led to the plaintiffs' indictment and eventual prosecution. They were therefore arguably acting under color of state law. Treating them as state law enforcement entities, their actions were entirely reasonable.

Second, for the sake of argument, it can be assumed that the Safir defendants were hired by a private non-profit organization. They received no benefit from the state. They did not perform a traditional public function, and the plaintiffs' alleged injury at the hands of the Safir defendants was not aggravated by the "incidents of government authority." *Edmonson*, 500 U.S. at 622, 111 S.Ct. 2077 (1991). If that were the case—as it is—the Safir defendants cannot be described "as a state actor." *Id.* at 620, 111 S.Ct. 2077.

## C. Conspiracy with Public Officials

The evidence is insufficient to satisfy any one of the three required elements to satisfy a conspiracy: "(1) an agreement between the state and private party; (2) to act in concert to inflict an unconstitutional injury and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello*, 292 F.3d at 324.

## D. Organization's Liability for Torts Committed by Employees

Plaintiffs have failed to establish that any defendant or the State promulgated or executed a policy or conducted any improper activity responsible for their alleged constitutional injury. The evidence supports a finding that this was a bona fide investigation conducted in good faith.

The plaintiffs claim that they were indicted and arrested on September 21, 2005 as a result of the defendants' misconduct. Compl. ¶¶ 33, 42. There is no indication this was a warrantless arrest. "When an unlawful arrest has been effected by a warrant an appropriate form of action is malicious prosecution," not false arrest. *Broughton v. State*, 37 N.Y.2d 451, 457–58, 373 N.Y.S.2d 87, 335 N.E.2d 310 (N.Y. 1975).

## E. Malicious Prosecution

The plaintiffs contend that the defendants manufactured evidence, tampered with witnesses, and falsified affidavits. These facts, if proven, would entitle plaintiffs to relief. The plaintiffs, however, have failed to introduce evidence that creates a genuine issue of material fact on this claim.

## F. Stigma Plus

█ The plaintiffs allege that they were denied due process because of extrajudicial statements made by Defendant Spitzer. Compl. ¶¶ 174–81. They claim that as a result of these statements they "lost their employment and their dedicated careers and were not able to obtain employment in the Racing Industry." *Id.* ¶ 176.

Plaintiffs have failed to establish a "plus" factor. They allege that the Attorney General's comments branded them as criminals and as a result "the Plaintiffs lost their employment and their dedicated careers and were not able to obtain em-

ployment in the Racing Industry." *Id.* ¶ 178. The court in *Paul v. Davis* rejected a similar claim. 424 U.S. 693, 96 S.Ct. 1155. In *Paul,* the police department imputed criminal behavior to the plaintiff in a publicly circulated flyer. The Supreme Court held that distributing the flyer did not violate the plaintiff's due process rights even though there were allegations that the statements "serious[ly] impair[ed] . . . [the plaintiff's] future employment opportunities." *Id.* at 696, 96 S.Ct. 1155.

The harm suffered here is similar to that claimed by the plaintiff in *Paul.* The plaintiffs were not barred from seeking future employment by the "formal operation of law" as in *Valmonte,* 18 F.3d at 1001. It is tragic when a convict cannot find employment following release. A fortiori it is also tragic that the acquitted struggle seeking employment, but there is nothing this court can do to compensate the plaintiffs by taking money from public officials in their private capacity for actions properly taken in protecting the public.

Plaintiffs argue that they were denied equal protection because the government irrationally and arbitrarily chose to prosecute them but not the "similarly situated" jockeys. Compl. ¶¶ 182, 188. This claim fails. The jockeys and the plaintiffs are not similarly situated. The plaintiffs were charged with a 291–count indictment. Many of these counts could not have been brought against the jockeys. They include the 144 counts of falsifying business records. Their roles and responsibilities were different from those of jockeys under New York law. The plaintiffs were the only individuals that could have been charged with having been involved in every count. Each individual jockey's involvement was more limited.

In any event, this "class-of-one" selective-prosecution-equal-protection claim is foreclosed. The decision on who to prosecute is clearly one "which by [its] nature involve[s] discretionary decisionmaking based on a vast array of subjective, individualized assessments," and in such cases, "treating like individuals differently is an accepted consequence of the discretion granted." *Engquist v. Oregon Dept. of Agr.,* 553 U.S. 591, 128 S.Ct. 2146, 2154, 170 L.Ed.2d 975 (2008). The reasoning behind *Engquist* applies with equal force to the decision to prosecute the plaintiffs, but not the jockeys. *Id.* at 2147; *See U.S. v. Moore,* 543 F.3d 891, 900 (7th Cir.2008); *Vassallo v. Lando,* 591 F.Supp.2d 172, 188–89 (E.D.N.Y.2008).

## V. Conclusion

The request for additional discovery is denied. The facts have been thoroughly investigated by all parties and the results of their inquiry have been submitted to the court on this motion. Plaintiffs' request to hold summary judgment in abeyance pending additional discovery is denied.

Defendants' motions for summary judgment are granted. The complaint is dismissed.

Malicious prosecution claims based upon state law have no merit. They are dismissed pursuant to supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(3).

No costs or disbursements are granted.

SO ORDERED.